IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES SANFORD,

       Plaintiff,

    v.

GMRI, INC. dba RED LOBSTER,

       Defendant.

CIV-S-04-1535 DFL CMK

MEMORANDUM OF OPINION
AND ORDER

Plaintiff James Sanford ("Sanford") moves for attorneys' fees and costs in the amount of $18,268.09 following the settlement of his ADA accessibility lawsuit against defendant GMRI, Inc. ("GMRI"). GMRI challenges the reasonableness of the requested fee award. For the following reasons, the court awards $8,132.67 in attorneys' fees and costs.

I.

Sanford, a quadriplegic, filed his lawsuit on August 5, 2004, claiming that he experienced numerous access barriers on his visits to GMRI's Red Lobster restaurant. On August 18, 2005,

1

the parties filed a settlement agreement and the case was dismissed.   Sanford released all of his equitable relief claims in exchange for $8,000 in monetary damages and GMRI's promise to remove or remedy the remaining architectural barriers.   (Mot. at 2.)   The resolution of the attorneys' fees issue was left for this motion.   (Id.)

II.

The ADA provides that a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs."   42 U.S.C. § 12205.   Courts have held that a prevailing party under this statute "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."   Barrios v. Cal. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th Cir. 2002).   A plaintiff who enters into a legally enforceable settlement agreement is considered a prevailing party.   Id.

The calculation of an appropriate fee award involves a two-step process.   Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).   "First, the court must calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate."   Id. Certain factors, such as the results obtained or the special skill and experience of counsel, should be taken into consideration when calculating the appropriate lodestar figure. Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996).   "Second, a court may adjust the lodestar upward or

2

downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2000). However, the lodestar amount is generally only adjusted in "rare and exceptional cases." Id.

Sanford requests $18,268.09 in attorneys' fees and costs. (Mot. at 5.) This amount includes $11,300 in attorney and paralegal fees for 61.45 billed hours and $6,968.09 in litigation expenses and costs. (Id.) The bulk of the requested litigation expenses consists of $5,513.75 in expert's fees. (Id.) While conceding that Sanford is the prevailing party, GMRI challenges the hours requested on several grounds.[1] In addition, GMRI argues that Sanford's request for expert witness fees should be denied as insufficiently documented.[2]

---

[1] GMRI contends that Sanford is not entitled to any attorneys' fees because he failed to provide it with a pre-litigation warning notice and a reasonable opportunity to cure the violations, citing Doran v. Del Taco, Inc., 373 F.Supp.2d 1028 (C.D.Cal. 2005). (Opp'n at 2.) GMRI acknowledges that the court already rejected this argument in White v. GMRI, CIV-S-04-0465 (August 22, 2005 E.D.Cal.). Therefore, the court will not address it again here.

[2] GMRI filed evidentiary objections to various declarations submitted with Sanford's reply brief. Several of these objections are to statements in declarations that the court does not rely upon. Therefore, the court need not address these objections. (Evidentiary Objections at 3-10.) GMRI's other objections are to the MeLisa Dotson and Bonnie Vonderhaar declarations. (Id. at 2.) GMRI argues that plaintiff cannot submit new evidence with a reply brief and asks that the evidence be excluded. GMRI cites Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 894-895 (1999), to support its position. However, in Lujan, the court found that submission of new evidence with a reply was untimely under Fed.R.Civ.P. 56(c), which requires such affidavits be submitted prior to the day of the hearing. In addition, Lujan found that the filing of new evidence violated the court's

1    A.   Reasonable Hours

2         1.   Limited Success

3         GMRI argues that the lodestar figure should be reduced to

4    reflect Sanford's limited success.  (Opp'n at 12-13.)  One of the

5    factors courts must consider in determining the lodestar figure

6    is the "results obtained" in the litigation, especially where a

7    plaintiff did not succeed on some of his claims.  Schwarz v.

8    Sec'y of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995).

9    In such cases, a two-part analysis is applied.  Id.  First, the

10   court determines whether the plaintiff's unsuccessful claims were

11   related to his successful claims.  Id.  If they are unrelated,

12   then the final fee amount should not include time spent on

13   unsuccessful claims.  Id.  If they are related, the court must

14   "evaluate[] the significance of the overall relief obtained by

15   the plaintiff in relation to the hours reasonably expended on the

16   litigation."  Id.

17        In this case, Stanford's successful claims are unrelated to

18   his unsuccessful ones.  The alleged violations are premised on

19   different facts and require the application of different sections

20   of the ADA Accessibility Guidelines to determine liability.

21   Therefore, the fee award must be reduced to match the level of

22   success Sanford obtained.

23

24   ────────────────────

25   briefing order in that case.  Here, there is no such briefing
     schedule and Rule 56(c) does not apply.  Therefore, the court
26   finds these documents to be properly submitted in support of
     Sanford's fee request.  GMRI's evidentiary objections to these
     declarations are denied.

                                    4

1    GMRI contends that Sanford only achieved two-thirds of the

2    relief he initially sought because Sanford conceded that: (1) he

3    lacked standing to bring approximately one-third of the

4    identified claims; and (2) GMRI was not responsible for fixing

5    alleged violations in the public sidewalk.  (Opp'n at 5-7.)

6    Sanford disputes GMRI's characterization of his concession on

7    these claims.  He argues that he did not concede that he lacked

8    standing, but anticipated that the court would reject his

9    standing arguments in light of its recent decision in Martinez v.

10   Longs, Civ-S-03-1843 (August 26, 2005 E.D.Cal.).  This argument

11   is not persuasive.

12   It is undisputed that Sanford was not successful on these

13   claims.  A claim is deemed unsuccessful "[w]here the plaintiff

14   has failed to prevail on [it]."  Hensley v. Eckerhart, 461 U.S.

15   424, 440, 103 S.Ct. 1933 (1983).  Therefore, the motivation

16   behind Sanford's concession is not controlling.  Schwarz, 73 F.3d

17   at 902 (when reviewing whether a party has achieved limited

18   success or not, "the reason for a claim's dismissal makes [no]

19   difference").  Moreover, Sanford admits that he knew the court

20   would reject these claims based on his lack of standing.  (Reply

21   at 6.)

22   The inclusion of claims for which a plaintiff has no

23   standing needlessly complicates the litigation and inflicts

24   unnecessary costs on defendant.  Such over-charging should be

25   discouraged.  Because Hubbard's time entries cannot be easily

26   divided between the successful and unsuccessful claims, the court

5

reduces Sanford's fee award by one-third to account for his limited success.  Id. at 904 (allowing for reduction in the total award where the court finds the unsuccessful claims to be unrelated to the successful claims).

### 2.  Other Factors

GMRI also challenges the appropriateness of Hubbard's requested hours, asserting that many of them are unnecessary, excessive, and/or redundant. (Opp'n at 3-12.)  GMRI advances several arguments in support of this assertion.

First, it argues that many of Hubbard's requested hours were unnecessary because Hubbard expended resources on claims which he knew Sanford lacked standing to pursue.  (Id. at 3-7.)  However, this is already accounted for in the reduction addressed above.

Second, GMRI argues that Hubbard's fees are excessive.  For example, GMRI argues that Hubbard's bill for 0.80 hours for preparation of his boilerplate settlement demand letter was unreasonable.  (Id. at 7.)  Hubbard responds that the amount of time spent drafting the settlement letter was not excessive as he also reviewed the file and associated documents.  (Reply at 5-6.) GMRI makes similar arguments as to other entries, challenging a total of 2.25 hours.  The court is not persuaded that these hours were excessive or unnecessary and declines to strike them.  The court notes that these hours will be reduced by one third in any event.

In addition to the above charges, GMRI challenges the time billed for plaintiff's motion to compel a site inspection.

1  (Orlick Decl. ¶¶ 7-8.)  It argues that there was no need to file

2  the motion.  (Id.)  In another case between GMRI and plaintiff's

3  counsel, GMRI challenged the lack of specificity in plaintiff's

4  request for a site inspection.  (Id.)  GMRI prevailed on its

5  challenge, and the court restricted the parameters of the

6  inspection.  (Id.)  GMRI responded with the same parameters when

7  Sanford requested a site inspection here.  (Id.)  In response,

8  Sanford filed a motion to compel.  (Id.)  In the end, plaintiff's

9  counsel withdrew the motion and agreed to GMRI's parameters.

10 (Id.)  However, Hubbard billed 7.0 hours on the motion to compel

11 the inspection.  (Id.)  The court agrees with defendant that

12 these hours were not reasonably expended and should not be

13 awarded.  Similarly, GMRI challenges the time Hubbard took to

14 read its responses and objections to discovery requests.  (Id. ¶

15 11.)  It submitted the same responses and objections in the two

16 previous cases filed against it by Hubbard, so it argues that it

17 should have only taken 0.50 hours, not 3.65 to review the

18 responses here.  (Id.)  The court agrees that these hours are

19 excessive given the repetitive nature of the litigation

20 prosecuted by plaintiff's counsel.  The court will reduce these

21 hours to 1 hour.

22     Third, GMRI challenges the reasonableness of Sanford's

23 claimed paralegal fees. (Opp'n at 8-9.)  Sanford seeks to recover

24 paralegal-level rates for individuals that Hubbard has previously

25 categorized as legal assistants.  Under California Business &

26 Professional Code § 6450(c), a person is qualified as a paralegal

1 if: (1) she possesses a certificate of completion of a paralegal
2 program from an ABA-approved or other accredited post-secondary
3 institution; (2) she possesses a baccalaureate degree and has
4 completed one year of law-related experience under the
5 supervision of a qualified attorney;[3] or (3) she possesses a high
6 school diploma or GED and has completed three years of law-
7 related experience under the supervision of a qualified attorney
8 before December 31, 2003.  GMRI challenges each of the five
9 individuals listed as paralegals.

10     First, it alleges that Sanford must present the court with a
11 "written declaration . . . stating that [each individual] is
12 qualified to perform paralegal tasks."  Cal. Bus. & Prof. Code §
13 6450(c)(3).  Hubbard's declaration generally states that each of
14 the individuals is qualified to perform paralegal tasks.
15 (Hubbard Decl. ¶ 22.)  Therefore, Sanford has met this
16 requirement.

17     Next, GMRI challenges each of the individuals based on her
18 failure to meet the § 6450 requirements listed above.  (Opp'n at
19 9-11.)  Sanford concedes that Christa Duncan will not be a
20 qualified paralegal until she receives her certificate of
21 completion from a paralegal program.  (Reply at 9.)  In addition,
22 it appears that Alisha Petras is not a qualified paralegal
23 because: (1) she does not have a baccalaureate degree or
24 paralegal certification; and (2) Sanford has not shown that she
25

26     [3] A "qualified attorney" is an attorney who has been
admitted to and has practiced before federal or California courts
for at least three years.

completed three years of law-related experience under a qualified
attorney before December 2003.[4]   (Hubbard Decl. ¶ 22.)   Finally,
MeLisa Dotson and Elva Garcia hold baccalaureate degrees, but
they did not complete their one year of law-related service under
a qualified attorney until June of this year.   (Reply at 6;
Dotson Decl. ¶ 4.)   Therefore, any time attributed to Dotson and
Garcia before June 2005 should not have been billed at a
paralegal rate.

On the other hand, GMRI's challenge to Bonnie Vonderhaar
should fail.   GMRI argues that Vonderhaar does not qualify
because Sanford fails to present evidence that she completed one
year of legal experience under the supervision of a qualified
attorney.   (Opp'n at 9-10.)   However, she satisfies § 6450(c)
because she holds a paralegal certificate from a NALA-approved
institution.   Therefore, she is a qualified paralegal in
California.   (Vonderhaar Decl. ¶ 3.)

In sum, Duncan and Petras should have been categorized as
legal assistants for the entire case, and Dotson and Garcia
should have been categorized as legal assistants for any time
billed before June 2005.   Sanford does not provide a proposed fee
for legal assistants.   Therefore, Sanford can only recover
paralegal rates for Vonderhaar's time and Dotson's and Garcia's
time post-June 2005.   The resulting fee award is $225.00 out of

---

[4] Sanford asserts that Petras was billed at a paralegal rate
in <u>White</u> and that the same fee should be paid here.   However, the
issue was not squarely presented in <u>White</u>; therefore, Sanford's
argument is unavailing.

1  the total $1,680.00 billed, or a reduction of $1,455.00.[5]

2      B.  Expert Witness Fees

3      GMRI challenges Sanford's request for $5,465.75 in expert

4  witness fees.  (Opp'n at 13-14.)  It argues that the invoice is

5  insufficiently specific because it fails to break down the people

6  involved, the hours worked, or the rates claimed.  (Id. at 13.)

7  GMRI also disputes the recovery of fees paid to "Robert with

8  Baran draftsman."  (Id.)  "Robert" is not identified, and the

9  invoice does not specify what work was done.  (Id.)  GMRI asserts

10  that it has construction and design departments equipped to

11  perform such drawings, so it is not clear why any draftsman work

12  was necessary.  (Id.)

13      A plaintiff does not need to provide detailed descriptions

14  of the time spent down to the minute, but the documentation has

15  to be sufficiently specific to allow the court to conclude that

16  the amount requested is reasonable.  Hensley, 461 U.S. at 437.

17  Here, the expert lists four separate entries: (1) "site

18  inspection with drive and burning pictures to CD" for 6 hours;

19  (2) "work on report" for 4.25 hours; (3) "work on report" for 3

20  hours; and (4) "finish report" for 1.5 hours.  (Hubbard Decl. Ex.

21  C.)  His hourly rate is listed as $175.00.  (Id.)  GMRI argues

22

23      [5] GMRI also argues that the court should reduce any fee
24  award because of the nature of plaintiff's litigation tactics.
    (Opp'n at 12.)  GMRI argues that this case does not raise novel
25  or complex questions of law, is not an "undesirable case," and
    does not require a lot of time and labor.  (Opp'n at 12.)  In
26  White, the court rejected these arguments, finding that GMRI was
    simply criticizing Hubbard's practice.  The same arguments are
    rejected here.

1  that the first entry is unreasonable because there is no way to
2  determine how much time the expert spent on each task.  (Opp'n at
3  13.)   In addition, it argues that the "work on report" and
4  "finish report" descriptions are too vague.  (Id.)   The court
5  disagrees.  The bill is specific enough to determine that the
6  amount requested is reasonable.

7       However, at least one-third of the inspector's time was
8  spent working on claims on which Sanford did not prevail.
9  Therefore, the expert fees for the report should be reduced one-
10 third as well; from $2,581.25 to $1,720.83.   In addition, the
11 draftsman's invoice does not provide sufficient information to be
12 evaluated.   Therefore, that amount is struck in its entirety.  As
13 a result, the overall expert fees are reduced from $5,513.75 to
14 $1,720.83.

15                               III.

16      Based on the forgoing discussion, Sanford is awarded
17 $4,957.50 for attorneys' fees, calculated as follows:

18 | Attorneys/Assistants | Hours | Rate[6] | Total |
19 | Lynn Hubbard (attorney) | 27.50 | $250 | $6,875.00 |
20 | Scott Hubbard (associate) | 1.90 | $175 | $332.50 |
21 | Paralegals | 3.00 | $75 | $225.00 |
22

23      [6] Hubbard requests the following rates for the hours billed:
24 $250 per hour for his time, $175 per hour for his associate, and
   $75 per hour for his paralegals.  (Hubbard Decl. ¶ 6.)  GMRI does
25 not challenge these rates.  In addition, these rates are
   consistent with what courts in this District routinely award to
26 Hubbard in similar cases.  See e.g., Hooper v. Calny,
   CIV-S-03-0167 (April 25, 2005 E.D. Cal.).  Therefore, the court
   finds the requested rates are reasonable.

**Sub-Total:**                                              $7,432.50

Limited Success Reduction (1/3):                     $4,957.50

In addition, the court awards Sanford's requested litigation expenses and costs minus a portion of the requested expert witness fees, totaling $3,175.17.  In sum, the court awards Sanford $8,132.67 in attorneys' fees and costs.

        IT IS SO ORDERED.

Dated: 11/11/2005


_____
DAVID F. LEVI
United States District Judge